UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-CR-436-MOC-DSC-1

|                              |     |       |
|------------------------------|-----|-------|
| **UNITED STATES OF AMERICA**, | )   |       |
|                              | )   |       |
|                              | )   |       |
|                              | )   |       |
| Vs.                          | )   | ORDER |
|                              | )   |       |
| **STEVIE LYNN BARDWIL,**     | )   |       |
|                              | )   |       |
| Defendant.                   | )   |       |
|                              | )   |       |

**THIS MATTER** is before the Court on Defendant's pro se Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 34). The Government has responded in opposition to the motion. (Doc. No. 37). For the following reasons, Defendant's motion will be **DENIED**.

I.      **BACKGROUND**

Defendant was charged on a Bill of Information on January 28, 2021, with one count of Distribution of, and Possession with Intent to Distribute, Methamphetamine. (Doc. No. 1). The charges stemmed from Defendant's conduct on December 23, 2019, where an undercover detective contacted Dominque Bernard Townes ("Townes"), Defendant's husband, who directed Defendant to meet with the undercover detective at a Target shopping center in Huntersville, North Carolina. (Doc. No. 13 ("PSR") ¶ 7).

Defendant provided the undercover detective with 82.6 grams of methamphetamine. (Id.). On January 17, 2020, law enforcement obtained a search warrant for the residence used by Defendant and Townes and seized two rifles (one DPMS AR-15 and one AK assault-style rifle, camouflage with an altered serial number), drug paraphernalia, and approximately one pound of marijuana. (Id. ¶ 8). In a recorded interview, Defendant admitted knowledge of the presence of

1

the safe containing the firearms, but said she had not looked inside stating, "maybe I didn't want to know." (Id.). On February 10, 2021, Defendant pled guilty to Count 1. (21 U.S.C. § 841). (PSR ¶ 2). On September 29, 2022, Defendant was sentenced to 33 months. (Doc. No. 25).

Defendant, now 40, is currently incarcerated at FPC Alderson. She has served approximately 10 months of her sentence, and her projected release date with full good time credit is April of 2025. The Government asserts that it is not aware of any disciplinary record for Defendant while incarcerated. Defendant filed an administrative request with the BOP for compassionate release on or about July 18, 2023, which was denied on July 28, 2023. (Doc. No. 34-1). The Warden's response stated:

> Your request describes a family situation which would fall under the Death or Incapacitation of the Family Member Caregiver category. Policy states that this category's requests are for inmates whose children are 'suddenly without a family member caregiver due to that caregiver's death or incapacitation.' Incapacitation is defined as an injury or illness that 'renders the caregiver incapable of caring for the inmate's child.' This category requires extensive information and documentation to be considered, which you have not provided.

(Id.).

On September 5, 2023, Defendant filed the pending motion, requesting that the Court reduce her sentence to home confinement. (Doc. No. 34). Defendant alleges that her three-year-old son has been diagnosed with speech delay and hyperactive sensory processing difficulty and requires therapy beginning in September of 2023. (Id. at p. 2). Defendant states that the current caregiver is unable to house her son and financially care for his special needs. (Id.). Defendant submits that there is no one else willing to take the child, and he may be placed in foster care. (Id. at pp. 2–3). Specifically, Defendant states that the child's caregiver, Defendant's best friend and former roommate, was the only person willing and able to care for her son and she is no longer able to care for the child financially and physically as she is going to have a complete

2

hysterectomy. (Id.). Defendant alleges that the caregiver and child are currently living in a hotel. (Id. at 3).

While Defendant's motion is focused on her son, her administrative request alleges that her daughter is in the care of the child's father who has an open case with the "Department of Child Services" due to assaulting his sister in the presence of his daughter. (Doc. No. 34-1). As part of Defendant's Motion, Defendant submitted a release plan, which included that Defendant and her son and daughter would reside at the son's paternal grandmother's home, along with the son's great aunt. (Doc. No. 34-2). In support of her Motion, Defendant also submitted written statements from friends and family members. (Doc. No. 34-4). The caretaker of Defendant's son stated that her doctor has ordered a complete hysterectomy, she and Defendant's son are currently residing at an extended stay hotel, and she cannot take care of him and his needs. (Id. at p. 1). Defendant's uncle submitted a statement that he would not be able to care for the child due to his work schedule but could allow Defendant and her son to reside with him. (Id. at p. 3). Defendant's son's paternal grandmother stated that she could not care for Defendant's son but could provide housing for Defendant and her son. (Id. at p. 4).

## II.     DISCUSSION

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides in pertinent part:

(c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court … upon motion of the defendant … may reduce the term of imprisonment (and may impose a term of probation or supervised release with or

3

without conditions that does not exceed the unserved portion of the original term

of imprisonment), after considering the factors set forth in section 3553(a) to the

extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . .

and that such a reduction is consistent with applicable policy statements issued by

the Sentencing Commission . . . .

Further, 28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy

statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18,

shall describe what should be considered extraordinary and compelling reasons for sentence

reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of

the defendant alone shall not be considered an extraordinary and compelling reason."

The relevant Sentencing Guidelines policy statement appears at § 1B1.13, and provides

that the Court may grant Compassionate Release if "extraordinary and compelling

circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent

that they are applicable," and the Court determines that "the defendant is not a danger to the

safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Although

the Fourth Circuit has concluded that this policy statement is not currently binding in connection

with motions filed by defendants, the Fourth Circuit and other courts of appeals have recognized

that it continues to provide important "guideposts." See United States v. McCoy, 981 F.3d 271

(4th Cir. 2020) (stating that U.S.S.G. § 1B1.13 remains helpful guidance even when motions are

filed by defendants); United States v. Thompson, 984 F.3d 431, 433 (5th Cir. 2021) ("Although

not dispositive, the commentary to the USSG § 1B1.13 informs our analysis as to what reasons

may be sufficiently 'extraordinary and compelling' to merit compassionate release.").

4

"U.S.S.G. § 1B1.13 provides that '[t]he incapacitation of the caregiver of the defendant's minor child or minor children' may constitute a compelling reason for the defendant's release." United States v. Guest, 2022 WL 2104492, at *13 (D. Md. June 9, 2022) (citing U.S.S.G. § 1B1.13 cmt.1(C)(i)). "Generally, compassionate release based on family circumstances has only been granted where a defendant is the sole available caregiver for his or her minor child or a closely related and incapacitated adult." United States v. Burrough, 2022 WL 2318512, at *5 (W.D.N.C. June 28, 2022).

In general, the defendant has the burden to show circumstances meeting the test for compassionate release. See, e.g., United States v. Neal, 2020 WL 5993290, at *4 (E.D. Pa. Oct. 9, 2020) (Gallagher, J.); United States v. Adeyemi, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020) (Kearney, J.). As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary." United States v. Willis, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (Johnson, J.) (citations omitted).

Defendant's motion seeks a reduced sentence under 18 U.S.C. § 3582(c)(l)(A)(i) based on "the death or incapacitation of the caregiver of the defendant's minor child" under U.S.S.G. § 1B1.13(b)(3)(A). Defendant alleges that her son was diagnosed with speech delay and hyperactive sensory processing difficulty in April of 2023, which require therapy beginning in September of 2023. (Doc. No. 34, p. 2). Defendant submits that her son's current caretaker is set to undergo a complete hysterectomy, and therefore she cannot adequately care for the child. (Id. at p. 3). In support of the motion, Defendant submitted a statement from the caregiver and medical records. (Doc. Nos. 34-4, 35). However, these submissions are inadequate to establish that the current caregiver is "incapacitated." See United States v. Guest, 2022 WL 2104492, at *13 (D. Md. June 9, 2022) (noting "incapacitation" is a "high bar").

5

The caregiver's one-paragraph submission states that her doctor has ordered that she have a complete hysterectomy. (Doc. 34-4, p. 1). Neither Defendant's motion nor the caregiver's statement include a date of when the hysterectomy procedure is to occur or details of her recovery. The caregiver also states that she is currently living with Defendant's son in an extended stay hotel. (Id.). The medical records submitted by Defendant consist of only three pages. (Doc. No. 35). The first two pages relate to the child's speech therapy and hyperactive sensory processing diagnoses, and the third page relates to the caregiver's hysterectomy. (Id.). Absent from the medical records is information related to the therapy requirements for the child (including the schedule, cost, and scope of the therapy) or a scheduled date for the caregiver's hysterectomy procedure. Accordingly, Defendant has failed to meet her burden of demonstrating that her son's caregiver is or will be become incapacitated at a future point.

Defendant states that the present caretaker is the only available caretaker and there is no one else able to "properly house him and financially and physically care for him and his special needs." (Doc. No. 34). In support of this argument, Defendant provided the following information: her son's father is serving a 120-month sentence; Defendant's parents are deceased; Defendant's son's paternal grandfather is deceased, and the paternal grandmother has a heart condition and is caring for her elderly sister and is not able to care for the child's special needs; and Defendant's only relatives in the area are unable to care for the child. (Id. at p. 2). In the written statements submitted in support of Defendant's Motion, Defendant's cousin stated that she is unable to care for Defendant's son because she has two children that are currently in school. (Doc. No. 34-4, p. 2). Defendant's uncle submitted that he is unable to care for Defendant's son because he works approximately one hour from his home, but he did offer to house Defendant and her son in his three-bedroom home. (Id. at p. 3). Defendant's son's

6

grandmother submitted that she cannot care for the son because she has her own doctor's appointments and cares for her elderly sister but did offer to provide housing for Defendant and her son. (Id. at p. 4).

Defendant has not submitted sufficient evidence to meet her burden that there is no one else able to care for her son. See United States v. Waldron, 2023 WL 4306910, at *2 (S.D.W. Va. June 30, 2023) ("Courts have declined to grant compassionate release based on family circumstances due to 'the absence of a robust evidentiary showing that the defendant is the only available caregiver.'"). The written submissions of Defendant's friends and family members demonstrate that while potentially inconvenient and challenging, there are individuals who can house and care for the child. United States v. Snyder, 2023 WL 3467221, at *3 (W.D. Va. May 15, 2023) ("it appears that there are other relatives who might be able to assist with [the child's] care."). It is also unclear from Defendant's Motion if there are other relatives locally or elsewhere who may be able to care for the child. Further, other than stating that her son requires therapy, Defendant has failed to properly establish what would be required of a caregiver in accommodating her son's special needs. In sum, Defendant has not met her burden of demonstrating that her family circumstances are extraordinary and compelling.

The Court further finds that, even if Defendant had shown extraordinary and compelling reasons for compassionate release, consideration of the Section 3553(a) factors counsel against relief. This Court must consider the sentencing factors in 18 U.S.C. § 3553(a), as "applicable," as part of its compassionate release analysis. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020). Those factors include "the nature and circumstances of the underlying offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law,

7

provide just punishment, afford adequate deterrence and protect the public from further crimes of the defendant." United States v. Prater, No. 3:13CR133, 2021 WL 54364, at *4 (E.D. Va. Jan. 6, 2021) (citing 18 U.S.C. § 3553(a)(1)–(2)). Section 3553(a) also instructs courts to consider the sentencing range established for the offense, as well as "the need to avoid unwarranted sentence disparities." 18 U.S.C. § 3553(a)(4), (6).

Defendant has not shown that the sentencing factors in Section 3553(a) warrant a reduction in her sentence. First, the nature and circumstances of Defendant's offense involve the Defendant's possession and sale of 82.6 grams of methamphetamine. (PSR ¶ 7). This conduct reflects Defendant's danger to the community and permitting Defendant to be released would not adequately protect the public from potential subsequent drug offenses. With respect to the history and characteristics of the Defendant, she was previously convicted in 2010 for the sale of a Schedule I Controlled Substance. (Id. at p. 7).

Finally, compassionate release is not appropriate here given the need to promote respect for the law and to avoid unwarranted sentencing disparities. Defendant was sentenced to 33 months for a serious drug offense. Defendant received a downward variance because even though she knew of the firearms in her residence, it was found that she did not use or possess them. (Doc. No. 26, p. 3). Defendant fails to demonstrate how release, after serving less than one-third of her sentence reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. See 18 U.S.C. § 3553(a)(2)(A).

Courts have generally denied release in circumstances comparable to those presented here. See, e.g., United States v. Henry, 2021 WL 5566770, at *4 (W.D.N.C. Nov. 29, 2021) (denying compassionate release of defendant convicted of possession with intent to distribute 50 grams of more of methamphetamine holding "[c]ontrary to what Defendant argues, she is a

threat to society and the community. Methamphetamine is one of the most dangerous drugs prosecuted in this district."); <u>United States v. Carter</u>, 2021 WL 4892967, at *3 (D. Kan. Oct. 20, 2021) (denying compassionate release of defendant convicted of possession with the intent to distribute 50 grams or more of methamphetamine finding "[t]o release him to home confinement or reduce his sentence to time served would radically alter the appropriate, below Guidelines sentence—the reduced sentence to which he agreed. Such a sentence would no longer reflect the seriousness of his offense."); <u>United States v. Sylvester</u>, 2021 WL 488320, at *2 (D. Me. Feb. 10, 2021) (denying compassionate release of defendant convicted of possession with intent to distribute narcotics finding "[a]s of now [defendant] has served about 30% of his full term . . . it would trivialize his crime to reduce his sentence now to time served.").

In sum, Defendant has failed to meet her burden that she is the only available caregiver for her minor child. Additionally, Defendant fails to demonstrate how early release from her sentence for her serious crime would protect the public and reflect the seriousness of her offense, promote respect for the law, and provide just punishment for her offense. <u>See</u> 18 U.S.C. § 3553(a)(2)(A). Consideration of the factors above show that Defendant's early release is inappropriate based on the offense of conviction.

For all these reasons, the Court will deny Defendant's motion.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 34), is **DENIED**.


Signed: December 4, 2023


Max O. Cogburn Jr
United States District Judge